**Appeal No. 2:09-cv-02307-SJO**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

NEW STREAM REAL ESTATE, LLC,
*Secured Creditor-Appellant,*

vs.

BLOOMFIELD ESTATES, LLC
*Debtor-Appellee.*

On Appeal from the United States Bankruptcy Court
Central District of California
Hon. Samuel Bufford
Chapter 11 Case No. 2:07-20197-SB

## APPELLANT'S OPENING BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
James K.T. Hunter (State Bar 73369)
jhunter@pszjlaw.com
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

*Counsel for Appellant New Stream Real Estate, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

I.      INTRODUCTION ................................................................................... 1

II.     BASIS OF APPELLATE JURISDICTION ........................................... 4

III.    STANDARD OF REVIEW ..................................................................... 6

IV.     ISSUES PRESENTED ............................................................................ 7

V.      STATEMENT OF FACTS ...................................................................... 7

        The District Court Claims ...................................................................... 7

        The Negotiation of the Settlement ......................................................... 9

VI.     SUMMARY OF ARGUMENT ............................................................. 13

VII.    ARGUMENT ......................................................................................... 14

        A.    The Bankruptcy Court Erred in Denying the Rule 9019 Motion on the
              Grounds that New Stream Lacked Standing ................................. 14

        B.    The Rule 9019 Standards Were Abundantly Satisfied .................. 18

              1.    The Legal Standard for Approval of a Settlement Agreement .......... 18

              2.    Bloomfield's Claims Were Doomed to Fail ............................ 20

        C.    Complexity of Litigation, and the Expense, Inconvenience and Delay ............... 24

        D.    The Paramount Interest of the Creditors and a Proper Deference to their
              Reasonable Views ........................................................................ 26

        E.    Other Factors ................................................................................ 26

CONCLUSION ................................................................................................... 27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4

ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.), 361 B.R. 337 (S.D.N.Y. 2007) ............................................................... 17, 18

5

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949) ....................................... 4

6

In re Drexel Burnham Lambert Group, 960 F.2d 285 (2d Cir. 1992) ............................ 5

7

Elder v. Uecker (In re Elder), 325 B.R. 292 (N.D. Cal. 2005) ..................................... 18

8

Expeditors International of Washington v. Colortran (In re Colortran), 218 B.R. 507 (B.A.P. 9th Cir. Cal. 1997) ......................................................................................... 4

9

Gulfstream v. Mayacamas Corp., 485 U.S. 271 (1988) .................................................. 4

10

Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778 (9th Cir. 2001) ...................... 27

11

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) ...... 18

12

Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001) ............................... 26

13

Martin v. Kane (In re A&C Props.), 784 F.2d 1377 (9th Cir. 1986) ............................. 19

14

In re Mirant Corp., 348 B.R. 725 (Bankr. N.D. Tex. 2006) ......................................... 21

15

Myers v. Martin (In re Martin), 1995 U.S. Dist LEXIS 9177 at * 22 (E.D. Pa. June 28, 1995) ................................................................................... 4, 21

16

17

In re Pac. Gas & Elec. Co., 304 B.R. 395 (Bankr. N.D. Cal. 2004) ............................. 20

18

Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968) ........................................................................... passim

19

Schwartzchild v. Tse, 69 F.3d 293 (9th Cir. 1995) ......................................................... 6

20

In re Slimick, 928 F.2d 304 (9th Cir. 1990) .................................................................... 4

21

Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC), 423 F.3d 166 (2d Cir. 2005) ........................................................................... 16, 17, 18

22

23

In re Solafide, Inc., 2008 WL 4362539 at *1 (C.D. Cal. Sept. 22, 2008) .................... 20

24

Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143 (9th Cir. 2000) ..... 6

25

United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325 (9th Cir. 1982) ....................................................................................................... 19

26

In re United States Trustee, 32 F.3d 1370 (9th Cir. 1994) ............................................. 6

27

Wells Fargo Bank, N.A. v. Guy F Atkinson Company of Cal., 242 B.R. 497 (B.A.P. 9th Cir. 1999) .................................................................................. 6, 17, 18

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In re Whiting, 2005 WL 1847172 at *3 (B.A.P. 10th Cir. 2005) .................................... 20

Wolinsky v. Maynard (In re Maynard), 290 B.R. 67 (D. Vt. 2002) ......................... 4, 5, 6

**STATUTES**

11 U.S.C. § 503(b)(2) ............................................................................................. 26

28 U.S.C. § 158(a) .................................................................................................. 4

Cal. Civ. Code § 1624(a) ......................................................................................... 23

**RULES**

Fed. R. Bankr. P. 8013 ............................................................................................. 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## I.    **INTRODUCTION**

This is an appeal from a March 12, 2009 order of the Bankruptcy Court (the "9019 Order") denying a motion (the "Rule 9019 Motion") filed by New Stream Real Estate, LLC ("New Stream") pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") to obtain Bankruptcy Court approval of a settlement agreement dated as of February 18, 2008 (the "Settlement Agreement").[1]  ER 1-5.  The Settlement Agreement resolved and terminated civil litigation that had been pending before this Court (Case No. 07-1543, the "District Court Action") via a consent judgment entered in the District Court Action on February 25, 2008 (the "Consent Judgment").  ER 55.

The plaintiffs in the District Court Action were Appellee Bloomfield Estates LLC ("Bloomfield") and its sole equity holder and manager, Kenneth J. Roberts ("Roberts").  They had asserted claims against New Stream, certain parties related to New Stream (collectively, the "New Stream Parties"), and two other parties, for the purpose of delaying New Stream from foreclosing on Bloomfield's 113-acre property that is collateral for a hopelessly defaulted $28 million (principal) loan that New Stream made to Bloomfield, and asserting claims for damages sounding in breach of contract, usury and fraud.

By the time the District Court Action approached readiness for trial, a series of rulings had been entered by this Court that made the further prosecution and trial of Bloomfield's claims a waste of time, money and resources, if not also an invitation for Rule 11 sanctions, malicious prosecution liability and embarrassment.  Bloomfield and Roberts' counsel even flatly informed them that their claims "were not worth anything."  ER 8.

Therefore, with a jury trial a week away, Bloomfield and Roberts followed their counsel's advice (ER 8) and abandoned their deflated claims in exchange for, among other benefits, releases and the right to an immediate appeal of this Court's ruling that Bloomfield's claim against New Stream for usury was unripe and could not go to a

---

[1]  See Appellant's excerpts of record (cited herein as "ER ___").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEY AT LAW
LOS ANGELES, CALIFORNIA

1  trial.

2       Bloomfield and Roberts proposed this settlement to the New Stream Parties.

3  ER 45-47.  Following several days of arm's-length negotiations between Bloomfield

4  and Roberts and the New Stream Parties (Id.), the parties arrived at the Settlement

5  Agreement and the form of Consent Judgment that would be entered by this Court on

6  February 25, 2008.  Bloomfield and Roberts each executed the Settlement Agreement.

7  Roberts signed for Bloomfield as its sole member.  ER 37.  Additionally, their counsel

8  executed the form of Consent Judgment to signify his approval.  ER 44.

9       Bloomfield and Roberts made representations to this Court, and to the New

10  Stream Parties, to obtain the entry of the Consent Judgment, including that Bloomfield

11  intended to be bound by the Consent Judgment.  ER 43.  Thereafter, over the course of

12  many months, Bloomfield made a series of representations to the Bankruptcy Court

13  and to its creditors that Bloomfield had settled the District Court Action pursuant to

14  the Settlement Agreement.  ER 58, 65, 70, 75.

15       However, some ten months after entry of the Consent Judgment, Bloomfield

16  sought a tactical advantages over New Stream in Bloomfield's chapter 11 case by

17  arguing that it is not bound by Settlement Agreement unless it is approved by the

18  Bankruptcy Court.  Bloomfield believed its argument gave it license to begin

19  relitigating the dismissed District Court Action claims anew in the Bankruptcy Court,

20  including those claims that this Court had ruled could not succeed.  ER 122.

21  Bloomfield's bankruptcy counsel later revealed that Bloomfield never intended to

22  seek bankruptcy court approval of the Settlement Agreement under Rule 9019.  ER

23  232.  At the same time, Bloomfield also argued that the only party authorized to file a

24  motion under Rule 9019 to obtain approval of the Settlement Agreement was

25  Bloomfield itself.  Bloomfield thus viewed this Court's Consent Judgment as a free

26  option that Bloomfield could utilize to avoid a disastrous imminent trial, and then

27  repudiate after its tactical needs had changed.  The Bankruptcy Court found

28  Bloomfield's position made for "a conundrum."  ER 237.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Bankruptcy Court wanted to be sure Bloomfield's creditors had notice of

2    settlement and an opportunity to be heard in opposition to its approval. ER 163.

3    Because Bloomfield would not file a Rule 9019 motion itself despite having

4    negotiated and executed the Settlement Agreement and presented it to this Court, at a

5    hearing held on January 27, 2009, the Bankruptcy Court granted New Stream

6    authority to file the motion. ER 168.

7    New Stream then prepared an extensive Rule 9019 Motion. ER 9-54. The Rule

8    9019 Motion relied in significant part upon the hard facts of this Court's prior rulings,

9    discussed below, that had eviscerated any likelihood Bloomfield had of succeeding on

10   its claims.

11   To assure good and sufficient notice, New Stream served its 9019 via overnight

12   courier on all parties having or claiming an interest in Bloomfield's bankruptcy case,

13   including all of Bloomfield's scheduled creditors and all parties that filed proofs of

14   claims. ER 50-53.

15   None of Bloomfield's creditors or stakeholders objected to the Rule 9019

16   Motion. But Bloomfield objected to the approval of the compromise that Bloomfield

17   had proposed, negotiated, documented, executed, and presented to this Court. Yet,

18   Bloomfield admitted that the only interests it was seeking to protect by opposing the

19   Rule 9019 Motion were Roberts' own. ER 201. Roberts, of course, also had accepted

20   the Settlement Agreement in his individual capacity as a direct party to the agreement

21   and therefore was not entitled to have his personal interests protected now.

22   On March 4, 2009, the Bankruptcy Court heard argument on New Stream's

23   Rule 9019 Motion. At the end of the argument, the Bankruptcy Court summarily

24   revoked New Stream's standing to file the Rule 9019 Motion, and then added that

25   New Stream "had failed to carry its burden." ER 262. The Bankruptcy Court did not

26   make findings to support its conclusions. The record of the hearing also does not

27   indicate that the Bankruptcy Court utilized the "TMT Trailer" factors that courts are

28   required to consider in concluding whether a settlement is fair and equitable. New

1  Stream submits that the Bankruptcy Court committed reversible error.

## II.    BASIS OF APPELLATE JURISDICTION

3  Section 158(a) of title 28 provides district courts with authority to hear appeals
4  from final and interlocutory orders of the bankruptcy courts. 28 U.S.C. § 158(a). For
5  purposes of finality under 28 U.S.C. § 158(a), an order "need not end the entire case,
6  but need only end any of the interim disputes from which appeal would lie." In re
7  Slimick, 928 F.2d 304, 307 n.1 (9th Cir. 1990). There is a split in authorities as to
8  whether an order denying a Rule 9019 motion constitutes a final order. See Wolinsky
9  v. Maynard (In re Maynard), 290 B.R. 67, 69-70 (D. Vt. 2002) (notwithstanding older
10  authorities to the contrary, an order disapproving a settlement should be considered
11  final for purposes of 28 U.S.C. § 158(a) because there is no indication that the
12  bankruptcy court will reconsider its order); Myers v. Martin (In re Martin), 1995 U.S.
13  Dist LEXIS 9177 at *22 (E.D. Pa. June 28, 1995) (bankruptcy court's denial of
14  motion to approve stipulation final), aff'd as to District Court's appellate jurisdiction,
15  rev'd on other grounds, 91 F.3d 389, 391 (3d Cir. 1991) (district court had jurisdiction
16  under 28 U.S.C. § 158(a) to review whether bankruptcy court abused its discretion by
17  disapproving a stipulation). In the Ninth Circuit, the authorities generally hold that an
18  order denying approval of a settlement is non-final but only as long the order goes no
19  further than that. See, e.g., Expeditors International of Washington v. Colortran (In re
20  Colortran), 218 B.R. 507, 510 (B.A.P. 9th Cir. Cal. 1997).

21  However, even if the 9019 Order is not deemed to be a final order, it still is
22  properly reviewed under the collateral-order exception to the final-judgment rule
23  established in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949).
24  Under the collateral-order doctrine, an order is reviewable if it (1) conclusively
25  determines the question presented, (2) resolves an important issue that is completely
26  collateral to the merits, and (3) concerns a right that would be effectively
27  unreviewable after a final judgment on the merits. Gulfstream v. Mayacamas Corp.,
28  485 U.S. 271, 276 (1988). See also Myers v. Martin (In re Martin), 1995 U.S. Dist

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    LEXIS 9177 at *23-*24.

2        Orders denying the approval of settlements thus fall squarely within the

3    collateral order doctrine. See Wolinsky v. Maynard (In re Maynard), 290 B.R. 67, 70-

4    71 (D. Vt. 2002) (order disapproving settlement meets the collateral-order exception

5    because it conclusively determines whether a settlement is fair and equitable, the issue

6    of fairness and equity of a settlement is separate from the merits of the underlying

7    claims, and the denial will be unreviewable on appeal from a final decision in the

8    litigation); see also, In re Drexel Burnham Lambert Group, 960 F.2d 285, 290 (2d Cir.

9    1992) ("our determination of the finality of the district court's order depends on

10   whether appellants will have another chance to assert their objections to the

11   Settlement Agreement").

12       The Bankruptcy Court conclusively determined that (1) New Stream lacked

13   standing to seek court approval of Bloomfield's settlement and (2) the settlement did

14   not meet the fair and equitable standards for approval.  These issues are separate from

15   the merits of the claims in the District Court Action.  See Wolinsky v. Maynard (In re

16   Maynard), 290 B.R. at 70.  A determination of the fairness and equity of a settlement

17   requires an analysis of:  the cost of pursuing the claims, the complexity of the

18   litigation, the likely duration of the litigation, the possibility of collecting on any

19   judgment, "and all other factors relevant to a full and fair assessment of the wisdom of

20   the proposed compromise." Protective Committee for Independent Stockholders of

21   TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  In this case, "all

22   other factors relevant" includes whether Bloomfield should have been judicially

23   estopped from objecting to approval of its own agreement or waived whatever rights it

24   might have had to do so, as discussed below.  These issues are collateral to the merits

25   of Bloomfield's fraud and usury claims.

26       Most importantly, the denial of the Rule 9019 Motion would be unreviewable

27   on an appeal from the final decision in the District Court Action.  Irrespective of

28   which party or parties ultimately were to prevail in the District Court Action if it were

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    to be restored, a final decision on the merits of the claims will render the Settlement

2    Agreement useless and New Stream's rights under the Settlement Agreement will

3    have been irretrievably lost.  See Wolinsky v. Maynard (In re Maynard), 290 B.R. at

4    70.  Moreover, there are two unique additional reasons here weighing in favor of

5    review under the collateral order doctrine here.  First, the order denying approval of

6    the settlement was entered by the Bankruptcy Court but the litigation being settled

7    was pending in the District Court.  The Bankruptcy Court order, entered in

8    Bloomfield's chapter 11 case, would not merge into a judgment issued in the District

9    Court Action at the conclusion of the District Court Action.  Second, the 9019 Order

10    was issued by the Bankruptcy Court opining on a settlement that had been accepted

11    over a year earlier by a U.S. District Court.  To insulate the Bankruptcy Court's order

12    from review would effectively make the Bankruptcy Court a de facto court of appeals

13    or instrument for collaterally attacking settlements accepted by the District Court

14    which is of superior jurisdiction.  For the Bankruptcy Court's 9019 Order also to be

15    free even from review by the District Court would permit Bloomfield to have

16    succeeded in turning Congress's scheme of bankruptcy court jurisdiction and review

17    on its head.  This Court therefore has, or should elect to exercise, jurisdiction over this

18    appeal.

### III.   STANDARD OF REVIEW

20         Matters of the interpretation of Bankruptcy Rule 9019 are reviewed *de novo*.

21    Wells Fargo Bank, N.A. v. Guy F Atkinson Company of Cal., 242 B.R. 497, 500

22    (B.A.P. 9th Cir. 1999) ("Atkinson"); Schwartzchild v. Tse, 69 F.3d 293, 295 (9th Cir.

23    1995) (discussing Rule 23(c)(2) of the Federal Rules of Civil Procedure).

24    Additionally, "[s]tanding is a question of law reviewed de novo."  Stewart v. Thorpe

25    Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1148 (9th Cir. 2000).  See also In re

26    United States Trustee, 32 F.3d 1370, 1372 (9th Cir. 1994) (a bankruptcy court's

27    conclusions of law are reviewed de novo).

28         A bankruptcy court's findings of fact are not set aside unless clearly erroneous.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Fed. R. Bankr. P. 8013.  The Bankruptcy Court did not set forth findings of fact.

2  ## IV.   ISSUES PRESENTED

3  Whether the Bankruptcy Court erred in determining that New Stream, as a

4  counter-party to a settlement agreement that was negotiated and executed by the

5  debtor in possession, lacked standing to bring a Rule 9019 Motion seeking approval of

6  the settlement agreement by the Bankruptcy Court, particularly in view of the

7  Bankruptcy Court having authorized New Stream to file the Rule 9019 Motion at a

8  prior hearing.

9  Whether in adjudicating the Rule 9019 Motion filed by New Stream, the

10  Bankruptcy Court erred by failing to apply, or to apply properly, the required four-

11  factor "TMT Trailer" standards for making an informed and objective judgment as to

12  whether a settlement is fair and equitable, specifically:  (i) the probability of success

13  in the litigation; (ii) the difficulties, if any, to be encountered in the matter of

14  collection; (iii) the complexity of the litigation involved, and the expense,

15  inconvenience and delay necessarily attending it; and (iv) the paramount interest of

16  the creditors and a proper deference to their reasonable views.

17  Whether under the facts and circumstances the Bankruptcy Court should have

18  overruled Bloomfield's objection to the Rule 9019 Motion filed by New Stream under

19  the principles of waiver and estoppel.

20  Whether under all the facts and circumstances the Bankruptcy Court erred in

21  denying the Rule 9019 Motion.

22  ## V.   STATEMENT OF FACTS

23  **The District Court Claims.**

24  On March 8, 2007, Bloomfield commenced the Litigation by filing a complaint

25  (the "Complaint") against the New Stream Parties and two additional parties (the

26  "Cazcor Parties") for:  (1) breach of implied covenant of good faith and fair dealing;

27  (2) promise made without intention to perform; (3) fraudulent nondisclosure; (4)

28  negligent nondisclosure; (5) rescission of written loan agreement related security

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

agreement; (6) usury; (7) declaratory relief; and (8) infliction of emotional distress. ER 84-111.

The core of the Complaint was Roberts' allegation that in addition to a documented $28 million loan New Stream made to Bloomfield (the "Loan"), the New Stream Parties and the Cazcor Parties had orally stated that some party (Bloomfield never specified who) would provide an additional $2 million loan that Bloomfield would use to pay the interest on the Loan. Id. There are no documents reflecting that the New Stream Parties ever made such a representation or promise, which this Court found made Roberts' allegation not credible in light of the fact that Bloomfield and Roberts were represented by competent counsel in the transaction who would know that such an oral promise would not be enforceable. ER 117. The Complaint also alleged that the interest rate on the Loan exceeded the maximum rate allowed by law. The District Court determined that this claim was unripe and could not go to trial. ER 126.

Upon commencing the Litigation, Bloomfield and Roberts sought a preliminary injunction and temporary restraining order enjoining New Stream from initiating steps to foreclose on the Property, which the District Court denied on March 16, 2007. ER 112. Bloomfield and Roberts filed a second motion for a preliminary injunction on or about July 23, 2007, and then unilaterally withdrew the motion on August 2, 2007. Also on August 2, 2007, Bloomfield and Roberts filed a third motion for an injunction staying foreclosure, which the District Court denied on August 22, 2007 (the "August 22, 2007 Order") ER 116.

On September 10, 2007, Roberts and Bloomfield filed a notice of appeal from the August 22, 2007 Order to the Ninth Circuit Court of Appeals (the "Court of Appeals"). On dates in September, 2007, Bloomfield filed its fourth and fifth motions to enjoin foreclosure. Each was rejected by the District Court for procedural deficiencies. On September 18, 2007, Bloomfield and Roberts filed a sixth motion to enjoin foreclosure, this time pending adjudication of their appeal from the August 22,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    2007 Order, which this Court denied by order dated October 22, 2007. ER 118.

2    Roberts and Bloomfield then filed a seventh motion seeking to enjoin foreclosure in

3    the form of an emergency motion to the Court of Appeals seeking a stay of

4    foreclosure pending their appeal from the October 22, 2007 Order, which the Court of

5    Appeals denied on November 2, 2007. ER 160. Following the denial of that seventh

6    injunction motion, Bloomfield commenced a voluntary chapter 11 case on November

7    5, 2007 expressly for the purpose of staying a foreclosure sale scheduled for the next

8    morning. ER 62.

9    **The Negotiation of the Settlement.**

10       The Settlement Agreement was the product of arm's-length negotiations among

11   Bloomfield, Roberts and the New Stream Parties, throughout which Bloomfield was

12   represented by the counsel of its choosing. On Friday, February 15, 2008, this Court

13   held a continued final pre-trial conference in the District Court Litigation. After

14   ruling on certain pre-trial matters, this Court directed counsel for New Stream and

15   Bloomfield to meet and confer in person to resolve disputed matters over Presidents'

16   Day weekend, and return to court on February 19, 2008. ER 45.

17       On the morning of Sunday, February 17, 2008, New Stream's California and

18   New York counsel met with Bloomfield and Roberts' joint counsel, Philip Dapeer, at

19   Mr. Dapeer's office. Id. During that meeting, they discussed terms for settling the

20   District Court Action. Id. At the conclusion of the meeting, respective counsel had

21   reached what they believed to be reasonable and acceptable settlement terms, but no

22   agreement was entered into at that time. Id. Rather, Mr. Dapeer stated that he had to

23   confer with Mr. Roberts to determine whether the proposed terms were acceptable to

24   Bloomfield and Mr. Roberts. ER 46.

25       Later on February 17, 2008, Mr. Dapeer called Mr. Novick and informed him

26   that he had spoken with Mr. Roberts, who generally agreed to the terms discussed

27   among counsel except wanted an additional provision prohibiting the New Stream

28   Parties from filing any motions or seeking relief in or dismiss the chapter 11 case for a

1    period of time so that Bloomfield could have an opportunity to pursue a

2    reorganization transaction. Id. The parties' respective counsel then negotiated the

3    scope and length of that period via a series of phone calls, and eventually agreed to a

4    no-litigation period that satisfied Bloomfield's additional demand.[2]

5    On February 18, 2008, Mr. Novick prepared a draft of a written agreement

6    documenting the settlement terms and transmitted it to Mr. Dapeer for review. ER 46.

7    The parties found that they were not in agreement with respect to a provision

8    regarding the treatment of claims by Bloomfield and/or Roberts against the Cazcor

9    Parties. Id. As a result, this section of the eventual Settlement Agreement was

10   commented upon and revised multiple times.[3] In addition, Mr. Dapeer stated that Mr.

11   Roberts wanted Bloomfield's bankruptcy counsel also to review the Settlement

12   Agreement, and requested Mr. Novick to forward the draft to Mr. Golubchik, which

13   Mr. Novick did. Id.

14   On February 19, 2008, Mr. Novick and Mr. Dapeer met again at the United

15   States Courthouse prior to the beginning of the continued status conference. ER 46.

16   At that time, counsel for Bloomfield requested a material modification to the

17   contemplated settlement terms. ER 46. The parties had initially contemplated that the

18   agreement would only preserve Bloomfield's rights of appeal with respect to its claim

19   for usury. ER 47. Bloomfield now requested through counsel that the carve-out be

20   enlarged so as to include claims for unconscionability based on usury. Id. The New

21   Stream Parties agreed to this further modification. Id. Mr. Dapeer wrote a note to

22   such effect on a draft settlement agreement. ER 48-49.

23   On February 19, 2008, the Settlement Parties appeared again before this Court

24   for the final (continued) pretrial conference. ER 174-178. At that time, Mr. Dapeer

25   presented the terms of the "simple" settlement to the Court. Id. When he concluded

26   his presentation, Mr. Novick provided additional details about the terms. Id.

27

28   _____
     [2] The final provision may be found in section 7 of the Settlement Agreement. ER 35.
     [3] The final provisions may be found in sections 5 and 13 of the Settlement
     Agreement. ER 34, 36.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The settlement documents were finalized to the satisfaction of all parties' counsel on February 20, 2008.  ER 47.  On February 21, 2008, Mr. Dapeer informed Mr. Novick that Mr. Roberts had the Settlement Agreement in hand and was considering it.  Later that day, Roberts, for himself and for Bloomfield, faxed his signature pages to Mr. Novick.  Id.  On February 25, 2008, this Court entered the Consent Judgment, terminating the Litigation.  ER 55.

The terms of the Settlement Agreement included the following:

- Bloomfield agreed to release and dismiss its claims against the New Stream Parties with prejudice, but with the proviso that it would retain the right to appeal from this Court's ruling that Bloomfield's usury claims were premature when principal remained unpaid (as it still does today). ER 32-40. Thus, Bloomfield bargained for and obtained the right to commence its usury appeal on an expedited basis, without incurring the cost of first going through a trial.

- The New Stream Parties and Roberts exchanged mutual general releases from any and all claims (Id.);

- Bloomfield received a mutual general release from any and all claims from defendants New Stream Capital, Robert Hebert, Donald Porter and John Collins (Id.);

- New Stream agreed to limit its claims against Bloomfield to those relating to or arising from the Loan and provided Bloomfield a release from any and all other claims; (Id.) and

- The New Stream Parties agreed to provide Bloomfield with a quiet period in its chapter 11 case during which time they would not initiate any motion practice or litigation, so as to provide Bloomfield an opportunity to pursue reorganization.  Id.

Shortly after this Court entered the Consent Judgment, Bloomfield represented in its publicly filed status reports in the chapter 11 case that it had settled the District

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Court Action. In its first Status Report, filed on December 13, 2007, Bloomfield reported: "The Debtor has made a settlement offer to New Stream and is hopeful that a resolution will be reached shortly. If a resolution is reached, the Debtor believes that it will be able to propose a consensual plan or seek dismissal of [the bankruptcy] case." ER 61. In its next Status Report, dated March 21, 2008, Bloomfield disclosed: "Since the last Status Conference, the parties have entered into a stipulation pursuant to which the District Court Litigation has concluded. The sole remaining issue from the District Court Litigation is the Debtor's assertion of usury against New Stream. Unless an agreement is reached with New Stream, the Debtor may raise this issue in connection with objecting to New Stream's claims and/or its demand for payoff. However, there are no pending matters before the District Court in the District Court Litigation." ER 67. Bloomfield's next status report, filed on or about April 1, 2008, contained substantially identical disclosure. ER 72.

The settlement was also disclosed in a disclosure statement for a plan of reorganization that Bloomfield filed on May 30, 2008 and served on all of its creditors. There, Bloomfield represented: "The parties have entered into a stipulation pursuant to which the District Court Litigation has concluded. The sole remaining issue from the District Court Litigation is the Debtor's assertion of usury against New Stream. The Debtor asserts that it is allowed to raise this issue in connection with objecting to New Stream's claims and/or its demand for payoff. There are no pending matters before the District Court in the District Court Litigation." ER 76.

Next, on July 15, 2008, the parties discussed settlement on the record in the Bankruptcy Court. At a July 15, 2008 status hearing, counsel for New Stream explained to the Bankruptcy Court judge that the Settlement Agreement was reached after nearly all pre-trial discovery and motions had been concluded, and that the proceedings were dismissed pursuant to a consent judgment entered a few before the jury trial was scheduled to begin. ER 171-173.

Finally, in New Stream's August 5, 2008 motion for summary judgment, New

1  Stream moved to dismiss the "Second Claim for Relief" in Bloomfield's adversary

2  complaint to the extent it asserted unconscionability on any basis other than usury on

3  the grounds that such claims are released by the Settlement Agreement and barred by

4  the Consent Judgment.  Bloomfield -- by this time also represented by Latham &

5  Watkins -- did not dispute this.  ER 134-159.  The Court then orally granted summary

6  judgment dismissing the unconscionability claim to the extent it is based on of

7  anything apart from usury.

8  ## VI.    SUMMARY OF ARGUMENT

9       The Bankruptcy Court erred in ruling that New Stream did not have standing to

10  bring the Rule 9019 Motion.  The Bankruptcy Court had granted New Stream

11  standing to do so before New Stream had filed the Rule 9019 Motion.  In revoking

12  New Stream's standing, the Bankruptcy Court granted a *sub rosa* motion for

13  rehearing, but without the standards for rehearing having been met, i.e., a showing of

14  facts or law that the Court overlooked the first time.  Finally, while the Court did not

15  explain the basis on which it revoked standing, it appears probable from a review of

16  the transcript that the Court misconstrued caselaw from the Second Circuit as

17  prohibiting non-debtors from filing a motion to seek approval of a debtor's settlement.

18  Those cases addressed whether a creditor can step into the shoes of the debtor to

19  negotiate and settle the claims on the debtor's behalf, not whether a creditor can

20  perform the modest procedural act of filing and mailing a motion to approve a

21  settlement that the debtor itself had negotiated and accepted.

22       The Bankruptcy Court's conclusion that the settlement was not in the best

23  interest of the estate was also error.  First, the sole party objecting to approval of the

24  settlement was Bloomfield.  Bloomfield's objections should have been overruled on

25  the grounds of waiver and estoppel.  Second, to determine whether the Settlement

26  Agreement was reasonable, fair and equitable, the Bankruptcy Court was required to

27  determine:  (i) the probability of success in the litigation; (ii) the difficulties, if any, to

28  be encountered in the matter of collection; (iii) the complexity of the litigation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    involved, and the expense, inconvenience and delay necessarily attending it; and (iv)

2    the paramount interest of the creditors and a proper deference to their reasonable

3    views.  The record does not reflect that the Bankruptcy Court utilized this or any

4    recognized test.  In particular, the Bankruptcy Court appears to have failed to take

5    fully into account the rulings made in the District Court Action that left Bloomfield

6    with no reasonable chance of success in its litigation.  ER 112, 116, 118, and 122.

7    The Rule 9019 Motion was among the most straightforward of such motions to

8    adjudicate, and grant, because by the eve of trial the likely outcome of the litigation

9    had been predetermined by the Court's rulings.  The District Court also failed to make

10   any findings about the expense and complexity of continuing the litigation, and did

11   not give proper deference to the sheer absence of any objections to the Rule 9019

12   Motion by any of Bloomfield's creditors.

### VII.  **ARGUMENT**

A.    **The Bankruptcy Court Erred in Denying the Rule 9019 Motion on the Grounds that New Stream Lacked Standing.**

16       At a hearing held on January 27, 2009, the Bankruptcy Court expressly <u>granted</u>

17   New Stream authority to file the Rule 9019 Motion.  The factual bases on which the

18   Court granted such standing were that Bloomfield had negotiated and executed the

19   settlement agreement, entered into the Consent Judgment, presented it to the District

20   Court, stated in multiple bankruptcy filings that the District Court Action was settled,

21   yet was refusing to comply with Rule 9019.

22          MR. GOLUBCHIK:  Your Honor, just to add one thing.  I look at

23       Rule 9019 as it was being discussed.  Under 9019, it's the Trustee in this

24       case in light of 1107 Debtor in possession that is the only party that has

25       the right to file that motion to approve compromise.  I know Mr. Novick

26       was talking about [us doing] filing, but in light of new counsel and advice

27       of new counsel that this is not a good deal, basically, I don't think my

28       firm in good faith, in good conscience can file a motion to approve a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    settlement. I just wanted to put that on the record.

2         MR. NOVICK:  The literal reading of 9019 is correct, but there are

3    many cases where other parties have been permitted to file 9019 motions

4    such as where the Debtors have conflict. In fact, there are cases where

5    other parties are even allowed to settle the debtor's claims and then put

6    them out on notice.

7         THE COURT:  Right.

8         MR. NOVICK:  So that's a Rule of Procedure, and that shouldn't

9    stand in the way of who mails this out to the creditors.

10        THE COURT:  Well, I think this should go out to creditors, and I

11   think that counsel for New Stream should be authorized to send it out if

12   the Debtor declines to do so.

13        MR. NOVICK:  And I guess the other point is that the Debtor

14   declined to do so a year ago when it should have. I don't think it's a

15   proper use of 9019 to say that a debtor can enter into settlements and then

16   have a free option as to whether it sends them out and is bound by them.

17   This is a point in case where -- a case in point where another party should

18   send it out. Thank you.

19        THE COURT:  That's why I said I think it should be sent out.

20        MR. NOVICK:  Thank you.

21        THE COURT:  Shall we have New Stream do it?

22        MR. GOLUBCHIK:  I don't think that the Debtor can do it, your

23   Honor, in light of what counsel --

24        THE COURT:  Okay. Let's have New Stream do it.

25   ER 168.

26        Thus, New Stream clearly was bestowed with explicit authority from the

27   Bankruptcy Court to file the Rule 9019 Motion.  The question then is whether, having

28   expressly granted New Stream authority to file the Motion, the Bankruptcy Court

1    erred in summarily reversing itself at the hearing on that Motion.

2         Although the Bankruptcy Court did not explain the basis for its decision to

3    revoke New Stream's standing, from the inquiries the Court made at the beginning of

4    the hearing it appears that the Bankruptcy Court may have erroneously credited

5    Bloomfield's argument that the Second Circuit's <u>Smart World</u> decision bars parties

6    other than a debtor in possession (or trustee where applicable) from filing a Rule 9019

7    motion. <u>Smart World</u> does not.

8         In <u>Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs.,</u>

9    <u>LLC)</u>, 423 F.3d 166, 170 (2d Cir. 2005), the debtor, Smart World, was engaged in

10    litigation with internet provider Juno, arising out of a failed proposed sale of Smart

11    World's customer assets to Juno. Smart World brought suit against Juno, and while

12    the parties were in the early stages of discovery, Juno negotiated a settlement of Smart

13    World's claims with Smart World's creditors, without Smart World's participation.

14    <u>Id</u>. at 171. Juno's lawyers then announced to Smart World that a settlement had been

15    reached and immediately terminated further discovery in the litigation. <u>Id</u>. Smart

16    World's principal creditor, WorldCom, characterized the settlement as a

17    "confidential" agreement between Juno and WorldCom. <u>Id</u>. Counsel for Juno had

18    taken the position that Smart World should not be included in any settlement

19    negotiations regarding Smart World's claims. <u>Id</u>. Smart World objected to the

20    settlement of its claims by a stranger to the adversary litigation without Smart World's

21    participation or consent.

22         As a result, the issue presented for decision by the Second Circuit on appeal

23    was "Did the bankruptcy court err in granting Smart World's creditors standing to

24    settle the adversary proceeding between Smart World and Juno, without Smart

25    World's participation and over Smart World's objections?" <u>Id</u>. at 173-74. In

26    analyzing this question, the Second Circuit determined whether Rule 9019 "vests

27    authority to settle or compromise solely in the debtor-in-possession." <u>Id</u>.

28         It is abundantly clear from the facts and analysis in <u>Smart World</u> that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Second Circuit was deciding whether, and under what circumstances, a non-party to a

2    debtor's litigation against a third party can step in to the debtor's shoes and settle the

3    claims out from under the debtor.  Thus, Smart World was adjudicating a different,

4    and far more serious and substantive issue than the one at bar here, which is merely

5    who can file and mail a Rule 9019 Motion once the debtor itself has formally settled

6    its own claims.

7        The issue that Smart World addressed was the permissibility of substantive

8    negotiation and settlement by third parties of a debtor's claims without the debtor

9    having participated in the negotiations or agreed to the settlement.  The issue before

10   the Bankruptcy Court below, and this Court now, is whether a debtor is the only party

11   that may *mail and file* a Rule 9019 motion after the debtor has settled its claims and

12   dismissed its litigation.  Notwithstanding the Second Circuit's shorthand reference to

13   the issue before it as "pursuing a Rule 9019 motion", the Smart World court was not

14   concerned with the question of *who can mail and file the motion*, but the question of

15   who can *compromise a debtor's claims* in lieu of the debtor.  That has no bearing on

16   this appeal.

17       Yet, although the Second Circuit reversed a New York bankruptcy court's Rule

18   9019 order on the facts before it, the Second Circuit still concluded that authority to

19   negotiate and settle a debtor's claims indeed may be vested in parties to the

20   bankruptcy proceeding other than the debtor-in-possession where circumstances are

21   appropriate.  Id. at 174.  The other case about which the Bankruptcy Court expressed

22   interest during the March 4, 2009 hearing, Adelphia, stated even more strongly that

23   third parties may be granted standing to substantively settle estate claims.  See ACC

24   Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.),

25   361 B.R. 337, 355 (S.D.N.Y. 2007) ("the Bankruptcy Court gave the various Creditor

26   Committees . . . authority . . . to litigate [certain inter-debtor claims].  It is beyond

27   cavil that this includes the authority to settle those disputes.").

28       The law in the Ninth Circuit is in accord.  See Atkinson, 242 B.R. 497, 502

("We conclude that interpreting Rule 9019 as restricting the negotiation of compromise and settlements to the trustee and debtor in possession is contrary to [precedents]."); Elder v. Uecker (In re Elder), 325 B.R. 292, 300 (N.D. Cal. 2005) ("the court may allow someone other than the trustee to compromise and settle claims, provided that there is sufficient reason and that person is acting in the interest of maximizing the estate for all creditors." (citing Atkinson)).[4]

New Stream never sought or attempted to exercise substantive authority over Bloomfield's claims. Bloomfield negotiated and settled its own claims and dismissed its District Court Action. New Stream merely filed and mailed the Rule 9019 Motion to obtain bankruptcy court approval of a settlement that Bloomfield had negotiated and executed. New Stream did so with express advance authority granted by the Bankruptcy Court because Bloomfield's own counsel refused to provide Rule 9019 notice to Bloomfield's creditors.

Nothing in the record of the hearing of the Rule 9019 Motion below provided any basis for the Bankruptcy Court to revoke its grant of standing to New Stream to file and mail the Rule 9019 Motion. Either the Bankruptcy Court misunderstood Smart World, or it acted with an absence of discretion. In either event, it committed reversible error.

**B.    The Rule 9019 Standards Were Abundantly Satisfied.**

    **1.    The Legal Standard for Approval of a Settlement Agreement.**

In Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968) ("TMT Trailer"), the Supreme Court instructed:

        There can be no informed and independent judgment as to whether a

_____

[4] Bloomfield argued below that the Supreme Court's decision in Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) calls Atkinson into doubt. This case is inapposite because the Supreme Court held that a creditor may not exercise a statutory right expressly granted to a debtor (and unrelated to Rule 9019) for the creditor's own and exclusive benefit. Moreover, In re Elder, Smart World and Adelphia were decided subsequent to Hartford Underwriters and are consistent with Atkinson.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  proposed compromise is fair and equitable until the bankruptcy judge

2  has apprised himself of all facts necessary for an intelligent and

3  objective opinion of the probabilities of ultimate success should the

4  claim be litigated.  Further, the judge should form an educated

5  estimate of the complexity, expense, and likely duration of such

6  litigation, the possible difficulties of collecting on any judgment

7  which might be obtained, and all other factors relevant to a full and

8  fair assessment of the wisdom of the proposed compromise. Basic to

9  this process in every instance, of course, is the need to compare the

10  terms of the compromise with the likely rewards of litigation.

11      The Ninth Circuit has recognized that "The purpose of a compromise agreement

12  is to allow the [debtor-in-possession] and the creditors to avoid the expenses and

13  burdens associated with litigating sharply contested and dubious claims." Martin v.

14  Kane (In re A&C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986) (emphasis added).

15  Accordingly, in approving a settlement agreement, the Court need not conduct an

16  exhaustive investigation into the validity, nor a mini-trial on the merits, of the claims

17  sought to be compromised.  United States v. Alaska Nat'l Bank (In re Walsh Constr.,

18  Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the settlement

19  was negotiated in good faith and is reasonable, fair, and equitable.  In re A&C Props.,

20  784 F.2d at 1381.

21      The Ninth Circuit has articulated the factors for determining whether a

22  proposed settlement agreement is reasonable, fair and equitable as follows:  (i) the

23  probability of success in the litigation; (ii) the difficulties, if any, to be encountered in

24  the matter of collection; (iii) the complexity of the litigation involved, and the

25  expense, inconvenience and delay necessarily attending it; and (iv) the paramount

26  interest of the creditors and a proper deference to their reasonable views in the

27  premises.  Id.  Consideration of these factors did not require the Bankruptcy Court to

28  determine whether the settlement presented is the best one that could possibly have

been achieved, but only whether the settlement falls, as some courts have framed it, above "the lowest point in the range of reasonableness." See In re Solafide, Inc., 2008 WL 4362539 at *1 (C.D. Cal. Sept. 22, 2008); In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

The Settlement Agreement should have been approved because there is no reasonable chance Bloomfield would have succeeded in the District Court Action after the multiple adverse rulings issued by this Court, discussed below, while continuing the District Court Litigation would have been a pointlessly expensive exercise.

The Bankruptcy Court appears to have focused exclusively on the modesty of the consideration received by Bloomfield, without comparing the consideration received to Bloomfield's likelihood of obtaining a better result if it continued the litigation, net of the costs of continuing to pursue the claims. The Court also appears to have overlooked ignored significant other determinative factors.

### 2.    Bloomfield's Claims Were Doomed to Fail.

To make an informed and independent judgment, "the court needs facts, not allegations." TMT Trailer 390 U.S. 414, 437 (U.S. 1968). New Stream presented hard facts: the rulings and orders of the District Court. Bloomfield presented only Roberts' mantra that someone allegedly told him they would lend him an additional $2 million on unspecified terms, heedless of this Court having precluded him from offering the evidence that would be required to support such a claim (e.g., evidence of damages), not to mention the utter unbelievability his allegation of having been defrauded in this manner while represented by multiple counsel.

Because the Bankruptcy Court was considering the merits of claims in the District Court Action, the Bankruptcy Court was required to review and consider the District Court's proceedings when valuing the claims being settled. See In re Whiting, 2005 WL 1847172 at *3 (B.A.P. 10th Cir. 2005) ("Regarding the first element, probability of success in the underlying litigation, the bankruptcy court noted that the State Court Lawsuit had an adverse decision at the trial level and that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trustee had received an opinion from his special counsel that the trial court's decision would likely be affirmed.  Although the Debtors argue that the State Court Lawsuit has merit and should be pursued, the evidence supports the bankruptcy court's conclusion as to the likelihood of a successful appeal."); In re Mirant Corp., 348 B.R. 725, 740 (Bankr. N.D. Tex. 2006) ("the court finds that the probability of Debtors' success in the litigation with Pepco is small based on the history of their conflict and the rulings of the District Court and the Court of Appeals for the Fifth Circuit."); see also In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (denying settlement where "the debtors' probability of success was 100 percent", because it has already obtained a favorable verdict in a state court proceeding).  Although New Stream presented all of the rulings from the District Court Action in support of the Rule 9019 Motion, it does not appear from the record that the Bankruptcy Court gave them due consideration.

The complaint filed in the District Court Action contained the following claims: (1) breach of implied covenant of good faith and fair dealing, (2) promise made without intention to perform, (3) fraudulent nondisclosure, (4) negligent nondisclosure, (5) usury, (6) rescission, (7) declaratory relief, and (8) infliction of emotional distress.  All the claims except the usury claim rested upon Roberts' allegation that there was a fraudulent oral offer of an additional $2 million loan to fund the interest payments that were to come due on the $28 million Loan.  By February 19, 2008, Bloomfield no longer had any opportunity to succeed on any of these claims at trial, and its litigation counsel Mr. Dapeer flatly admitted that the claims were "not worth anything." ER 8.

In its August 22, 2007 Order, this Court ruled that under California law, irrespective of whether a loan agreement might otherwise be usurious, no cause of action for usury arises until principal has been completely repaid. ER 116-117.  The Court further ruled that this rule of law applies irrespective of whether Bloomfield's claim was one for damages or a declaratory judgment. Id.  On that basis, the Court subsequently ruled, in a February 12, 2008 Order, that Bloomfield would not be

permitted to present its usury claims at trial. ER 126. Then, in addressing disputed

proposed jury instructions at the final pretrial conference, the District Court ruled that

this claim could not be submitted to the jury at all. ER 129-133.

The Settlement Agreement and Consent Judgment did not give up any of

Bloomfield's rights with respect to the usury claims. The claims were barred by this

Court's orders prior to the Settlement Agreement. The Settlement Agreement and

Consent Judgment <u>preserved</u> Bloomfield's right to appeal from those rulings and

litigate its alleged usury claims if the ruling is over turned. Moreover, they enabled

Bloomfield to commence its appeal to the Ninth Circuit immediately rather than await

the conclusion of the rest of the District Court Action (jury trial and deliberation,

potential post-trial briefing and motions, etc.). The Settlement Agreement enhanced,

and certainly did not diminish, Bloomfield's rights with respect to the putative usury

claims.

Bloomfield's claims for breach of an alleged oral promise to provide an

additional $2 million loan to fund the interest on the $28 million Loan New Stream

provided were frivolous and/or barred by rulings of the District Court, for many

independent reasons.

    a.    Bloomfield and Roberts have failed to produce any evidence of

any of the New Stream Parties ever promising a second $2 million loan, other

than Roberts' own self-serving allegations, despite that Bloomfield and Roberts

were represented by two law firms in connection with the Loan transaction who

surely would have memorialized such a promise, and that many hundreds, if not

thousands, of pages of emails and drafts were generated in the negotiation and

documentation of the Loan.

    b.    This Court called the value of the claims into question by holding

on that Roberts' allegations of having been defrauded lacked credibility. In its

August 22, 2007 Order, the Court held that it was "rather unlikely" that a

"savvy businessman" such as Roberts, who was "assisted by able counsel in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

negotiating the loan agreement" "could be defrauded in the way he claims he was." ER 117. In the October 22, 2007 Order, the Court concluded that "Plaintiffs have failed to present credible evidence that the New Stream Parties promised to lend an additional $2 million." ER 120. Although this by itself does not completely preclude the fraud claims, it weighs heavily against their likelihood of success on the merits in any analysis of the claims' value.

     c.     At the final pretrial conference, the District Court excluded from evidence sixty-three (63) trial exhibits that Bloomfield had intended to offer in support of its claim as a result of Bloomfield's failure to address New Stream's evidentiary objections. ER 129-133.

     d.     In its August 22, 2007 Order, this Court correctly ruled that the alleged oral promise to lend $2 million did not give rise to a breach of contract claim pursuant to the California Statute of Frauds (Cal. Civ. Code § 1624(a)). ER 116-117. This Court reiterated that ruling in a February 12, 2008 Order ruling on motions in limine. ER 122-126. At the final pretrial conference held on February 15, 2008, the Court effectively dismissed the claim by ruling that it could not be submitted to the jury. ER 129-133.

     e.     Bloomfield had abandoned its claims for breach of a written agreement *prior* to the Settlement Agreement, after having had to concede in connection with the preparation of the final pretrial order and memoranda of contentions that it was unable to identify any provisions of the written documents that were breached by any of the New Stream Parties. ER 129-133.

     f.     Most fatal to the $2 million "fraud" claims, this Court ruled in its February 12, 2008 Order that as a result of Bloomfield's failure to provide any disclosure as to the nature and extent of injuries suffered or how it was damaged, the only evidence of damages it would be permitted to present at trial would be the principal amount of the loan and the amount New Stream claimed to be due. ER 125-126. That damages evidence related only to the usury

claims that were no longer going to trial on ripeness grounds. Had the fraud claims gone to trial, Bloomfield would not have been permitted to demonstrate any damages relating to those claims (e.g., the availability of more favorable financing terms from another lender that were rejected in expectation of an alleged $2 million second loan).

g.    Bloomfield did not offer any evidence of having sustained damages in opposition to the Rule 9019 Motion. The facts and evidence were grossly lopsided in New Stream's favor.

The transcript of the 9019 hearing strongly suggests that the Bankruptcy Court did not consider the events in the District Court Action or the impact of this Court's rulings, on the value and likelihood of success of Bloomfield's claims. For example, the Court inquired about whether the failure to lend $2 million would not have given rise to a $2 million damage claim by Bloomfield, indicating that the Bankruptcy Court was not giving weight to this Court's *in limine* order precluding Bloomfield from introducing such evidence. ER 242. (Bloomfield would not have had $2 million damages because it was an alleged loan that would have had to be repaid, presumably with interest, not an indefeasible $2 million payment to Bloomfield.) There was no evidence in the record from any stage of these proceedings, that Bloomfield sustained any damages as a result of not having the temporary use of the second alleged loan funds. In any event, the issue was mooted by this Court's grant of New Stream's *in limine* motion precluding use of any such evidence at trial if in fact it exists.

The record below does not indicate that the Bankruptcy Court considered Bloomfield's "probability of success in the litigation" as required. Even if the Bankruptcy Court did consider that prong of the Rule 9019 standards, it committed clear error in failing to conclude that the rulings in the District Court Action had doomed Bloomfield's claims there.

C.    **Complexity of Litigation, and the Expense, Inconvenience and Delay.**

Because Rule 9019 involves a balancing test, this prong is weighed against,

among other things, the probability of success in the Litigation. Because Bloomfield's probability of success was zero, no further expense, inconvenience or delay was justifiable. Such expense and delay would have been tremendous.

At a minimum, assuming for the moment that the claims had not been barred by the District Court's pretrial rulings, there would have been one or more multi-day federal civil jury trials that likely would have been followed by post-trial briefs and motions, plus all of the attendant costs such as transcripts and expert witness fees. There would also have been at least an additional week of intensive attorney time spent preparing for the jury trial. If Bloomfield's claims had any remaining value these costs would have consumed it.

Moreover, Bloomfield is not willing to proceed to trial. Rather, it asserts that if the Consent Judgment were to be vacated, its new team of Latham attorneys would require four more months of discovery to prepare for trial. ER 79-83. Presumably this would include deposing witnesses located on both coasts. Given that Latham's disclosed standard hourly billing rates range to $1,075 per hour, the cost to the estate of continuing the District Court Litigation to verdict and post-verdict proceedings easily can be expected to exceed $1 million or more. Spending such money to pursue speculative claims based upon an oral promise to lend $2 million, which the Court has found to be unbelievable, would be senseless.

The evidence before the Bankruptcy Court on the costs of pursuing the claims was entirely one sided in favor of New Stream. Bloomfield offered <u>no</u> <u>evidence</u> as to how much it would cost Bloomfield's estate and creditors for Bloomfield to continue gambling with creditors' recoveries in the hope of generating a wishful windfall for Roberts, nor demonstrated that such costs would bear some reasonable relationship to Bloomfield's likelihood of success and amount of recoveries in the event of success. To the contrary, Roberts testified that he <u>had no idea whatsoever</u> how much it might cost to pursue the claims nor even how much already had been spent. ER 300-301. Therefore, the record below demonstrated that the cost of pursuing the claims weighs

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    strongly in favor of approval of the Rule 9019 Motion and dismissal of the claims.

2    **D.    The Paramount Interest of the Creditors and a Proper Deference to Their**

3    **Reasonable Views.**

4    Because the claims released by the Settlement Agreement had essentially no

5    chance of success at this stage, and because the cost of pursuing them would outweigh

6    the possible benefits of success even if success was a realistic possibility, the

7    Settlement Agreement was in the best interest of Bloomfield's creditors. This is

8    particularly true because the post-petition legal fees that would be incurred to continue

9    the litigation would rank senior in priority to claims of general unsecured creditors.

10   See 11 U.S.C. § 503(b)(2) (compensation awarded to estate professionals entitled to

11   prior of payment over most types of prepetition claims).

12   Moreover, all of Bloomfield's creditors and alleged creditors, almost all of

13   whom are located in the Los Angeles area, were served with the Rule 9019 Motion by

14   overnight courier and none objected. ER 50-54. The record does not indicate that the

15   Bankruptcy Court gave deference to creditors' satisfaction with the settlement.

16   **E.    Other Factors.**

17   The Supreme Court in TMT Trailer specified that courts should consider "all

18   other factors relevant to a full and fair assessment of the wisdom of the proposed

19   compromise." Protective Committee for Independent Stockholders of TMT Trailer

20   Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). An important additional factor

21   here is judicial estoppel. Judicial estoppel "prohibits a litigant from asserting

22   inconsistent positions in the same litigation. The doctrine is commonly applied to bar

23   a party from making a factual assertion in a legal proceeding which directly

24   contradicts an earlier assertion made in the same proceeding." Humetrix, Inc., v.

25   Gemplus S.C.A., 268 F.3d 910, 917 (9th Cir. 2001) (citations omitted). Courts invoke

26   this doctrine "not only to prevent a party from gaining an advantage by taking

27   inconsistent positions, but also because of general considerations of the orderly

28   administration of justice and regard for the dignity of judicial proceedings, and to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    protect against a litigant playing fast and loose with the courts." Hamilton v. State

2    Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citations omitted).

3        Bloomfield presented its settlement to this Court on February 19, 2008.  ER 47.

4    Bloomfield and Roberts represented in the Consent Judgment that they agreed to be

5    bound by its provisions, that they were capable of complying with the obligations set

6    forth in the consent judgment, and there was no just reason to delay its entry.  ER 47.

7    Bloomfield then proceeded to make numerous written and oral representations in its

8    Bankruptcy Case that it had settled the District Court Litigation.  See supra.

9    Bloomfield also represented to the Bankruptcy Court (accurately) that the only party

10   whose interests are effected by the Settlement Agreement is Roberts, who is not a

11   bankruptcy debtor and who directly consented to the Settlement Agreement.

12   Bloomfield and Roberts then lay in wait for ten months after entry of the Consent

13   Judgment to begin attacking it in order to create an excuse to seek leave to file a

14   dramatically amended complaint in the Bankruptcy Court on the eve of the final

15   pretrial conference in the usury litigation, causing over seven months of delay, so far.

16       Bloomfield is clearly taking a position inconsistent with that it took before this

17   Court when it presented the settlement and agreed to the Consent Judgment, and

18   admits it is only doing so for the benefit of Roberts, who also agreed to the Consent

19   Judgment.  Particularly in light of the failure of any other party in the Bankruptcy

20   Case to object to the Rule 9019 Motion, the doctrine of judicial estoppel is another

21   factor that the Bankruptcy Court should have weighed heavily in favor of approval of

22   the Settlement Agreement.

## CONCLUSION

24       For all of the foregoing reasons, New Stream respectfully requests this Court to

25   reverse the Bankruptcy Court's order denying the Rule 9019 Motion and grant

26   approval of the Settlement Agreement.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:  June 23, 2009

PACHULSKI STANG ZIEHL
  & JONES LLP


By  /s/ James K.T. Hunter
James K.T. Hunter (CA Bar No. 73369)
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

*Attorneys for Defendant*
*New Stream Real Estate, LLC*

28

# PROOF OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 1633 Broadway, 22nd Floor, New York, New York 10019.

On June 23, 2009, I served the following document(s) described as:

**OPENING BRIEF OF APPELLANT**
**NEW STREAM REAL ESTATE, LLC**

on interested parties in this action by placing a true and correct copy of such document, addressed as follows:

*See Attached Service List*

☐ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties as indicated on the attached Service List with fax numbers indicated.)

☑ (BY E-MAIL) By transmitting by electronic mail, to the e-mail addressee(s) as indicated on the attached Service List.

☐ (BY OVERNIGHT DELIVERY) By sending by Federal Express to the addressee(s) as indicated on the attached Service List.

I declare under penalty of perjury under the laws of the State of New York that the above is true and correct.

/s/ Daniel A. Fliman
Daniel A. Fliman

## SERVICE LIST

David B. Golubchik, Esq.
Levene, Neale, Bender, Rankin et al.
10250 Constellation Blvd. Ste 1700
Los Angeles, CA  90067
Email:      *dbg@lnbrb.com*

<u>Attys for Debtor and Plaintiff</u>
Susan S. Azad, Esq.
Kimberly A. Posin, Esq.
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
Email:      *susan.azad@lw.com*
            *kim.posin@lw.com*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA